Cordy, J.
(concurring, with whom Lenk, J., joins). I concur in the court’s conclusion that in this case the Probate and Family Court may undertake to make findings necessary to enable the plaintiff to apply for special immigrant status under 8 U.S.C. *744 § 1101(a)(27)(J) (2012). I do so because of our strong State policies aimed at protecting children from the effects of abuse and neglect, and the apparent gap between the ordinary jurisdiction of the Probate and Family Court and the benefits available under Federal law for immigrant children (between the ages of eighteen and twenty-one) who can establish that they have been abused, neglected, or abandoned by one or both of their parents in their native countries. I do so reluctantly, however, because this opinion stretches our equity jurisprudence to its outer edge, beyond what the court majority concluded was appropriate in Eccleston v. Bankosky, 438 Mass. 428 (2003), a markedly different case.[1]
In my view, it would have been far preferable if the Legislature had, as other State Legislatures have, acted on legislation that would have explicitly provided for expanded State court jurisdiction to address claims like that of the plaintiff. Without such legislation, the court is left to engage in gymnastics of logic and circular reasoning to conclude that the plaintiff is “dependent” on the court solely because she needs the court to declare that she is “dependent” on the court in order to meet one of the requirements of the Federal statute, and in no other respect.

In Eccleston v. Bankosky, 438 Mass. 428, 431-433 (2003), the Probate and Family Court had placed the child in the custody of the Department of Social Services at the age of eleven because of the unfitness of her parents, subsequently appointed a guardian with whom the child lived, and ordered her father to pay support. Id. at 431-433. The question was whether the father could be ordered to continue to provide support for the child after she attained the age of eighteen and continued to live with her guardian, where she could not live with either parent because of abuse, yet had no means of support and was plainly “unemancipated.” Id. at 428-429, 432. This court concluded that where a comprehensive State legislative scheme provided for postminority support of a child who was unemancipated and who lived with one of her parents, the Probate and Family Court could use its equitable powers in order to “close an unintended gap” in the scheme and provide for similar support for unem-ancipated children of families disrupted by abuse such as the one in that case. Id. at 437. Here, the plaintiff was not the subject of court proceedings while she was properly within its jurisdiction and is not seeking a guardian or order of support, and the gap is between the State courts’ jurisdictional limits and Federal immigration law.